Southern Engineering and Metal Products Corporation v. Commissioner.
Southern Eng'g & Metal Prods. Corp. v. Commissioner
Docket No. 15598.
United States Tax Court
1950 Tax Ct. Memo LEXIS 279; 9 T.C.M. (CCH) 93; T.C.M. (RIA) 50035; February 9, 1950
W. G. Ward, Esq., du Pont Bldg., Miami, Fla., and Charles B. Costar, C.P.A., First Nat'l Bank Bldg., Miami, Fla., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in petitioner's declared value excess-profits tax and excess profits tax for the fiscal year ended April 30, 1943, in the respective amounts of $2,660.05 and $16,919.88. The issues are whether respondent erred in disallowing as deductions in the computation of taxable net income an item claimed as attorney's fees in the amount of $5,200, an item claimed as appraisal fees in the amount of $2,340.60, an item claimed as accountant's fees in the amount of $2,500, and an item claimed as *280 obsolescence and abandonment in the amount of $11,430.47. Findings of Fact Petitioner is a corporation incorporated in May, 1940, under the laws of the State of Florida with its principal place of business at # 25 N.E. 17th Terrace, Miami, Florida (formerly located at 1800 North Miami Avenue, Miami, Florida). The return for the fiscal year ended April 30, 1943, was filed with the collector for the State of Florida at Jacksonville, Florida. The return was filed on the accrual basis. During part of the existence of petitioner corporation H. B. Bryan, Jr., and L. H. Collar each owned 50 per cent of its capital stock and were its officers. Under "Schedule F - Compensation of Officers" of the return of petitioner corporation for the fiscal year ended April 30, 1943, Bryan was listed as president and Collar as vice president but the return was signed by Collar as president. The petition filed with this Court in this proceeding was signed by Collar as president prior to dissolution and surviving trustee in dissolution of petitioner corporation. On March 27, 1943, Collar made the following agreement with E.F.P. Brigham and N. R. Field, attorneys, of Miami, Florida: *281 "I hereby employ you to represent me in connection with the negotiations relative to the purchase of the stock of Henry B. Bryan, Jr. in Southern Engineering & Metal Products Corporation. "It is understood that I am to pay to the said Henry B. Bryan, Jr. 50% of the appraised valuation of the equipment and stock on hand belonging to Southern Engineering & Metal Products Corporation in cash within 15 days from the 3rd of April, 1943, said valuation to be based upon the accountant's report for income tax purposes together with the appraisal of Mr. Wyerick and Mr. Daugherty. "It is estimated that the amount of money to purchase Mr. Bryan's interest in said Southern Engineering & Metal Products Corporation will be from $22,500.00 to $27,000.00. You agree to assist me in raising the necessary money for me to purchase Mr. Bryan's interest in said corporation. "In the event you are successful in these negotiations and in helping me borrow the money to purchase Mr. Bryan's interest in said corporation, then and in that event I agree to pay you for your services in this connection and for your future services in representing me and/or the corporation in its future operations a 25% interest *282 in said corporation in its or in a partnership which will operate said business, in the event said corporation is dissolved. Any bonus and/or interest payable for the use of said money shall be paid by you from the earnings of your 25% interest. "It is further understood that any necessary expenses for traveling, etc. in connection with the securing of this money will be paid by the business. "In the event you are not successful in these negotiations and in helping me raise the money to purchase Mr. Bryan's interest, then it is understood and agreed between us that you are to receive no compensation whatever for your efforts. "I of course agree to give such aid and assistance in working out this deal as may be required by you. "Yours very truly, "We hereby accept employment on the terms mentioned above. [Signed] L. H. Collar "[Signed] E.F.P. Brigham "[Signed] N. R. Field" Pursuant to said agreement, Brigham and Field performed services in connection with the purchase of the stock of H. B. Bryan, Jr. They also performed other services for petitioner corporation. Some time after April 30, 1943, petitioner corporation was dissolved. On May 1, 1943, Brigham and *283 Field each received a 12 1/2 per cent interest in a partnership which took over the running of the business of petitioner corporation. On July 27, 1943, the partnership was dissolved under a dissolution agreement, part of which follows: "WHEREAS the undersigned entered into a partnership agreement on May 1st, 1943, which partnership agreement is of record and on file with the Birmingham Ordinance District of the United States Government, and with the American Bank & Trust Company, of Miami, Florida; and "WHEREAS said partnership was created for the purpose of securing the attorneys fees due and to become due E.F.P. Brigham and N. R. Field, Attorneys at Law, of Miami, Florida; and "WHEREAS their fees have been determined to be the amount heretofore paid them as shown by the records of The Southern Engineering & Metal Products Corporation, Not Incorporated, plus the sum of Twelve Thousand Five Hundred Dollars ($12,500.00), and one-fourth (1/4) of the net profits of said partnership for the month of July, 1943; and "WHEREAS said attorneys fees have been paid, or agreed to be paid and secured satisfactory to the said E.F.P. Brigham and N. R. Field, and it is the desire of all the *284 parties hereto to enter into this agreement for the purpose of dissolving said partnership and to clarify the status between the parties; "NOW, THEREFORE, in consideration of the foregoing, and the sum of One Dollar ($1.00) and other valuable considerations, paid by each of the parties hereto to the other, the receipt of which is hereby acknowledged, IT IS HEREBY AGREED as follows: * * *
"II. "The consideration to be paid said attorneys for their fees and services rendered, for which this partnership existed as security, which partnership is hereby dissolved, is as follows: "Eight Thousand Dollars ($8,000.00) cash, receipt of which is hereby acknowledged by the said E.F.P. Brigham and N. R. Field, and the further consideration of Forty-five Hundred Dollars ($4500.00) evidenced by four (4) notes, all dated July 27th, 1943, due monthly, beginning September 1st, 1943, each for the sum of One Thousand Dollars ($1,000.00), except the last note, which is for Fifteen Hundred Dollars ($1500.00), and all bearing interest from date at the rate of five (5) per cent per annum; "As additional compensation to said attorneys, it is agreed that they shall retain all sums heretofore *285 paid them in connection with the business of said The Southern Engineering & Metal Products Corporation, Not Incorporated, and by its predecessor, The Southern Engineering & Metal Products Corporation, a corporation, either by way of fees, drawing accounts or other methods of compensation; and the further consideration of onefourth (1/4) of the net profits of The Southern Engineering & Metal Products Corporation, Not Incorporated, for the month of July, 1943, which is to be paid on or before August 15th, 1943, the amount of same to be determined by Charles Costar, of the auditing firm of Abess & Costar, and that said one-fourth (1/4) of the net profits is to be computed without any deduction for any withdrawals made by any partner and charged in the month of July for any account whatsoever; and without taking into account any reserve which has been customarily set up on the books of said partnership for the onefourth (1/4) interest of E.F.P. Brigham and N. R. Field. In making out his audit and computing the net profits for July, 1943, it is understood that Mr. Costar will set up all machinery and improvements purchased, paid for, and/or contracted to be paid for as a capital investment, *286 which shall not be charged, pro rata or otherwise, against E.F.P. Brigham and N. R. Field, or otherwise, computed so as to reduce the net profits thereby for July, 1943. "III. "Upon execution and delivery of this agreement, said partnership created for securing the payment of said fees and services, as heretofore set forth, shall stand dissolved, and L. H. Collar and Frances S. Collar, his wife, shall be solely responsible for all past and future obligations of any nature whatsoever of said partnership, and its predecessor, The Southern Engineering & Metal Products Corporation, a corporation, * * *. * * *
"VI. "According to the books of said partnership, the sum of Five Thousand Three Hundred and Fifty Dollars ($5,350.00) has been set up as a credit against said fees and services of said E.F.P. Brigham and N. R. Field, carried forward from the predecessor corporation. It is understood and agreed that Three Hundred and Fifty Dollars ($350.00) of said sum has been paid, which said attorneys are allowed to keep as part compensation for their services, and the remaining Five Thousand Dollars ($5,000.00) has not been paid, but it is considered as a part of said sum of Twelve *287 Thousand Five Hundred Dollars ($12,500.00) above mentioned. * * *
"[Signed] E.F.P. Brigham (SEAL) "[Signed] Marion W. Brigham (SEAL) "[Signed] N. R. Field (SEAL) "[Signed] Janet Knox Field (SEAL) by N. R. Field, her atty. in fact "[Signed] L. H. Collar (SEAL) "[Signed] Frances S. Collar (SEAL)" Petitioner corporation had been engaged principally in the business of producing metal stampings until several months before Pearl Harbor when it obtained a contract with Army Ordnance for the manufacture of 20 millimeter ball projectiles. In order to perform under this contract and another of similar character petitioner found it necessary to expand its facilities by setting up an assembly line for the production of projectiles. It was unable to obtain new machinery for this purpose; consequently a quantity of second-hand machinery was bought and installed. The assembly line began production in the late spring or summer of 1942 but because of the stepping up of requirements by the Government frequent changes were made from time to time. This necessitated the abandonment of certain machinery parts and tools, including collets-devices for holding the unfinished *288 projectiles in the shaping machines while work was being performed upon them, and the substitution of new parts and tools. The assembly line continued in production until the contracts expired, a year or two after the end of the period here involved. At the end of the war some of the machinery was discarded and sold as junk. Amortization was allowed by the respondent with respect to petitioner's defense facilities. Pursuant to the following letter, an engineer named Carl A. Daugherty made an engineering survey of petitioner's equipment as of March 31, 1943: "February 27, 1943 "Messrs. Bryan & Collar "Southern Engineering & Metal Prod. Corp. "Miami, Fla.
"Subj: Engineering Survey "Dear Sirs: "Acceptance is made herein of your request to conduct an engineering survey of the tangible physical equipment of Southern Engineering & Metal Products Corporation. "The purpose of this survey is to establish an accurate inventory of all equipment, material, and supplies used for or in connection with the operation of your business located on the property of your corporation. "The findings of this survey will reflect true and accurate quantities, segregation, and classification *289 of equipment, material, and supplies with all factors set forth for establishing valuation, cost, condition, and usage. "My fee for this engineering service will be on a basis of $50.00 per diem, plus any specific expenses as may be incurred by direction of your corporation. It is estimated that the survey will be completed within ten days. "Please note your acceptance of the above, and upon receipt of your voucher in amount of $200.00, I will start this survey at 8:00 a.m. Monday morning, March 1, 1943. "Yours very truly, "[Signed] Carl A. Daugherty "Carl A. Daugherty" The survey was made so that petitioner corporation would have a true statement for auditing, income tax, and borrowing purposes. It was also used in connection with the negotiations by L. H. Collar for the purchase of the stock of H. B. Bryan, Jr. A liability of $2,340.60 for the above survey was incurred by petitioner corporation to C. A. Daugherty during the fiscal year ended April 30, 1943. From the inception of petitioner corporation in 1940 the auditing firm of Abess & Costar had handled the auditing work on a monthly retainer. A liability of $2,500 was accrued by petition corporation as of April 30, 1943, for *290 services rendered by the above firm. The obligation was subsequently assumed and paid by the partnership that succeeded petitioner corporation, A part of the above services rendered by the auditing firm consisted of assistance in working out the method for the purchase of the stock of H. B. Bryan, Jr. Opinion Respondent disallowed as a deduction for the fiscal year ended April 30, 1943, an item claimed as attorney's fees in the amount of $5,200, which is part of a liability of $5,350 which petitioner alleges was accrued on its books as of April 30, 1943, to attorneys E.F.P. Brigham and N. R. Field for services rendered to petitioner. We have set forth in our findings the contract of employment entered into between these two attorneys and L. H. Collar that eventually led to the payment (as evidenced in the dissolution agreement also set forth in our findings) of the $5,350 fee and other fees to these attorneys. This contract of employment clearly shows that it was entered into by L. H. Collar in his individual capacity for the purpose of having the attorneys help him raise funds for him to buy the stock of H. B. Bryan, Jr., in petitioner corporation. But Field testified that, *291 in spite of the language of the contract of employment, it was his recollection that petitioner corporation, not L. H. Collar, bought the stock of H. B. Bryan, Jr. Brigham, too, in his testimony spoke to "the corporation buying his [Bryan's] stock" but he also referred to the transaction as "the Collar interest buying out Mr. Bryan." However, we have deemed it unnecessary to find whether it was L. H. Collar or petitioner corporation that bought out Bryan. In neither case would the fees paid to attorneys in connection with this stock purchase have been deductible by petitioner corporation. If Collar bought out Bryan, then the fees of the attorneys for services in connection with the purchase were not a deductible business expense of petitioner corporation, since the services were not performed for the corporation. If petitioner corporation bought out Bryan, then the fees were also not deductible as a business expense of petitioner corporation, but should have been treated as a capital expenditure, i.e., as part of the cost of the stock. Fireman's Insurance Co., 30 B.T.A. 1004; Dorcas G. Rehtz, 26 B.T.A. 807. Brigham and Field testified that they performed *292 other services for petitioner corporation, but that at least a part of their services were in connection with the stock purchase. Since the only services mentioned in the contract of employment were in connection with the stock purchase, and since petitioner made no breakdown of the fees paid these attorneys to show which, if any, portions of such fees were for other services, there is not sufficient evidence in the record to refute the determination of respondent that the amount of $5,200 of such fees should be disallowed as a deduction by petitioner corporation and we sustain that determination. Respondent also disallowed as a deduction for the fiscal year ended April 30, 1943, an item claimed as appraisal fees in the amount of $2,340.60. We have set forth in our findings the letter in which Carl A. Daugherty, the engineer who made the appraisal and charged the fees, stated the terms of his employment. Respondent's position is that the letter shows that the arrangement was between the engineer and Bryan and Collar, not between the engineer and petitioner corporation. However, we think that respondent errs in drawing such a conclusion from the fact that the letter was addressed *293 to "Messrs. Bryan & Collar, Southern Engineering & Metal Prod. Corp." It was perfectly natural for a communication in regard to employment by the corporation to be addressed to officers of the corporation. There was plausible testimony on the part of more than one witness that the appraisal was made for petitioner corporation to aid it in obtaining a true picture of its financial state for auditing and other corporate purposes, and we have therefore found that the liability for the appraisal was that of petitioner corporation. The fact that the results of the appraisal were also used in the negotiations for the purchase of the stock of H. B. Bryan, Jr., does not require of us a different finding. The evidence is clear that the appraisal was made in March, 1943, and that therefore the liability was incurred by petitioner corporation during the fiscal year ended April 30, 1943. There is testimony, which was not disputed, that the amount of $2,340.60 was paid for the above appraisal services. We accordingly hold that respondent erred in disallowing as a deduction for the fiscal year ended April 30, 1943, an item claimed as appraisal fees in the amount of $2,340.60. Respondent also *294 disallowed as a deduction for the fiscal year ended April 30, 1943, an item claimed as accountant's fees in the amount of $2,500. Charles B. Costar, a member of the auditing firm of Abess & Costar, testified that a liability in this amount was accrued on the books of petitioner corporation as of April 30, 1943, for auditing services performed by his firm and we have so found. However, he also testified that a part of the fees covered services rendered in connection with the purchase of the stock of H. B. Bryan, Jr. For the same reasons we gave in our discussion of the legal fees, above, we hold that accountant's fees in connection with the stock purchase were not a deductible expense of the corporation, whether it was L. H. Collar or petitioner corporation that bought the Bryan stock. Also, just as with the legal fees, petitioner has submitted no breakdown of these accountant's fees to this Court to show which, if any, of such fees were for services in connection with the stock purchase and which were for other services. Accordingly, petitioner having failed in its burden of proof, we have no alternative but to sustain the determination of respondent disallowing the deduction of $2,500 *295 claimed as accountant's fees for the fiscal year ended April 30, 1943, and we hereby sustain that determination. Finally, respondent disallowed as a deduction for the fiscal year ended April 30, 1943, an item claimed as obsolescence and abandonment in the amount of $11,430.47. According to petitioner, the figure of $11,737.56, which approximates petitioner's claim, was obtained by subtracting the value fixed by engineer Carl A. Daugherty for petitioner's equipment as of March 31, 1943, in the appraisal we have mentioned above, from the alleged book figures for the said equipment. However, respondent contends, we think justly, that no proof was made of the correctness of the $11,737.56 amount. This amount was not connected by proof with any particular property or properties. Moreover, no proof whatsoever was made of the factors from which, according to petitioner, the figure was derived, i.e., the appraised values of the equipment involved or the book values of the said equipment. Under Regulations 111, section 29.23 (e)-3, the taxpayer may claim as an abandonment loss the difference *296 between the adjusted basis and the salvage value of the property abandoned. With respect to items that were actually abandoned during the taxable year, we think it was incumbent upon petitioner to show the particular items abandoned, their adjusted basis, and their salvage value in order to overcome the presumption in favor of the determination by respondent. No such showing of any of these things having been made, petitioner has failed in its burden of proof. Similarly, with respect to items that were not abandoned during the year but were continued in use until the contracts expired, there was also a filure of proof necessary to establish a deduction for obsolescence. Under Regulations 111, section 29.23 (1)-6: "* * * a reasonable deduction for obsolescence, in addition to depreciation, may be allowed in accordance with the facts obtaining with respect to each item of property concerning which a claim for obsolescence is made. * * *" Here petitioner has not even listed the items of property concerning which its claim for obsolescence is made, let alone other pertinent facts, such as the *297 adjusted basis of such items. We accordingly hold that respondent did not err in disallowing as a deduction by petitioner for the fiscal year ended April 30, 1943, an item claimed as obsolescence and abandonment in the amount of $11,430.47. Decision will be entered under Rule 50.