T.C. Memo. 1996-432


UNITED STATES TAX COURT


JAMES B. MILLER, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7900-94.                    Filed September 24, 1996.


James B. Miller, Jr., pro se.

<u>Alison W. Lehr</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies and accuracy-related penalties relating to petitioner's 1990 and 1991 Federal income taxes as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|-----------|---------------------------------------|
| 1990 | $21,617 | $4,323 |
| 1991 | $18,156 | $3,631 |

After settlement of some issues, the issues for decision are: (1) Whether petitioner is entitled to deduct expenses relating to a home office; (2) whether petitioner has adequately substantiated claimed business expenses relating to his scrap metal recycling business; and (3) whether petitioner is liable for the accuracy-related penalties.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time he filed his petition, petitioner resided in Lake Worth, Florida.

During 1990 and 1991, petitioner owned and operated as a sole proprietorship a scrap metal recycling business. Suppliers would deliver scrap metal to the warehouse petitioner rented for his business, or petitioner or his employees would pick up scrap metal from suppliers and bring it to petitioner's warehouse. None of the scrap metal was ever brought to petitioner's residence in which petitioner maintained an office (home office) for the performance of administrative and management work relating to his scrap metal recycling business.

At petitioner's warehouse, scrap metal was prepared for resale and shipped or delivered personally by petitioner or his employees to wholesalers throughout southern Florida.

Petitioner maintained the home office because there was no suitable space in the warehouse for him to perform necessary administrative and management work relating to his scrap metal recycling business. Most of the time during which petitioner worked on his scrap metal recycling business, petitioner was physically located in his home office.

Petitioner used the home office mainly to place telephone calls to potential customers and to maintain data and spreadsheets on his computer relating to operation of his scrap metal recycling business. Over the telephone from his home office, petitioner generally made arrangements for the purchase and resale of scrap metal. Telephone calls received at the warehouse were routed first to the home office and then, if not answered at the home office, were transferred to the warehouse.

Petitioner prepared at his home office advertising material, brochures, and fliers to mail to customers. On such material, the address indicated for petitioner's business was the warehouse address, not petitioner's home address.

Petitioner often would meet with customers at their places of business. Other than for entertainment, petitioner never met with customers in his home office.

Petitioner visited the warehouse frequently in order to, among other things, check on employees and operations at the warehouse, deliver supplies, and pick up and deliver cash -- the form of payment typically used in petitioner's scrap metal recycling business.

During most of 1990, petitioner lived in a rented residence with two of his daughters and his girlfriend at 7350 Estrella Court, West Palm Beach, Florida (Estrella residence). The Estrella residence consisted of a kitchen, a combined living and dining room area, a family room, four bedrooms, 3.5 bathrooms, an attached garage, and a swimming pool. Petitioner often entertained personal and business guests at dinner parties at the Estrella residence.

From the end of 1990 through 1991, petitioner lived in a condominium that petitioner owned at 614 N.W. 13th Street, Boca Raton, Florida (condominium). The condominium consisted of a kitchen, a combined living and dining room area, two bedrooms and 1.5 bathrooms. Two of petitioner's daughters occasionally lived with petitioner in the condominium.

During 1990 and 1991, petitioner's home office relating to his scrap metal recycling business was located in the combined living and dining room area of both the Estrella residence and the condominium. Petitioner furnished the living and dining room area with desks, file cabinets, a computer, and calculators. The record does not indicate what other furniture was located in the

living and dining room area. Petitioner had six telephone lines running into the home office.

As indicated, petitioner paid employees of his scrap metal recycling business in cash. Employees of petitioner's scrap metal recycling business were generally hired on a temporary basis by petitioner's warehouse foreman. The employees generally were transient or homeless individuals and worked in the warehouse. Employees of petitioner's scrap metal recycling business were required to sign a written agreement, but there was no line on the agreement to indicate an employee's Social Security number or personal address, and neither petitioner nor the warehouse foreman generally obtained Social Security numbers or addresses of the employees.

Petitioner did not prepare and submit Forms W-2 or 1099 with respect to wages paid to employees of his scrap metal recycling business, and petitioner withheld no Federal or State taxes with regard to wages paid to his employees.

At the end of each day, petitioner's warehouse foreman would prepare a written cash report and would indicate thereon amounts paid and received that day from the purchase and resale of scrap metal, wages paid to employees, and expenses paid at the warehouse. Generally, at the end of each day the warehouse foreman also would call petitioner and provide petitioner with information concerning the cash received and spent at the warehouse that day.

The cash reports that were prepared each day by the warehouse foreman would be reviewed every few days by petitioner, who would enter data from the cash reports onto spreadsheets petitioner maintained on the computer located in his home office. Prior to trial, the majority of the written daily cash reports relating to petitioner's scrap metal recycling business were lost or misplaced. Petitioner's computer spreadsheets with regard to employee wage expenses incurred at the warehouse generally correspond with information with regard thereto as reflected in the limited number of daily cash reports that are in the record.

According to petitioner's computer spreadsheets, the warehouse foreman received total wages of $19,798 in 1990 and $20,956 in 1991.

Petitioner's employees occasionally incurred traffic fines for speeding and other traffic violations while picking up or delivering scrap metal.

During 1990 and 1991, petitioner's warehouse was broken into and burglarized several times. Reports were made to the police, but petitioner did not retain copies of the police reports or other records indicating what was stolen from petitioner's warehouse.

In late 1990, due apparently to pending litigation involving a former employee and to a child custody dispute with his former spouse, petitioner filed for bankruptcy and paid legal fees in connection with the bankruptcy proceeding.

In 1991, petitioner paid medical expenses relating to his daughters, to employees of his warehouse, and to his own medical needs.

Petitioner often traveled in his automobile to meet with customers and prospective customers. Petitioner provided refreshments for customers at his warehouse, and occasionally petitioner purchased lunch for employees, for customers, and for himself during meetings at restaurants.

On his 1990 and 1991 Federal income tax returns, petitioner claimed deductions for alleged expenses relating to his scrap metal recycling business. The deductions claimed include alleged miscellaneous expenses relating to petitioner's home office, rent and utilities relating to petitioner's home office and to the warehouse, employee wages, fines and losses from burglaries, legal fees, employee benefits, medical expenses, travel expenses, and meal and entertainment expenses.

Allegedly due to a loss of many of petitioner's books and records during the bankruptcy proceeding, the only records relating to petitioner's scrap metal recycling business that petitioner produced to respondent's revenue agent during the audit and at trial were: (1) Copies of the computer spreadsheets reflecting alleged daily and monthly expenses by category for all of 1990 and 1991 except for one month of 1990; and (2) some of the daily cash reports and receipts for 1990 and 1991.

On audit, respondent determined that petitioner's claimed home office expenses did not qualify for a deduction and that petitioner's books and records did not adequately substantiate many of the claimed cash expenses relating to petitioner's scrap metal recycling business, and respondent generally disallowed all expenses claimed as deductions where the nature and amount of the expenses could not be substantiated by specific receipts or billing statements.

Respondent refused to accept petitioner's computer spreadsheets as adequate substantiation of expenses incurred by petitioner in his scrap metal recycling business because respondent determined that the backup documentation was inadequate. For example, during the audit and at trial, respondent did not allow or concede deductions for claimed expenses for employee wages where petitioner could not identify either Social Security numbers or addresses of the employees, but respondent did allow or concede deductions for wage expenses indicated on the computer spreadsheets for employees for whom petitioner provided Social Security numbers or addresses. Respondent also disallowed claimed expenses for wages of the warehouse foreman as reflected on the computer spreadsheets in excess of $12,000 for each year.

The schedule below sets forth the expenses at issue herein as reflected in petitioner's computer spreadsheets, as claimed by petitioner on his 1990 and 1991 Federal income tax returns, and

the portions thereof now deemed by respondent to be allowable or not allowable.  Note that some of the categories of expenses are different for each year:

1990

| Category | Computer Spreadsheets* | Expenses Per Return | Allowed By Respondent | Disallowed By Respondent |
|---|---|---|---|---|
| Rent | $ 8,220 | $ 11,765 | $ 1,190 | $ 9,855 |
| Utility | 3,687 | 21,279 | 19,604 | 1,675 |
| Office | 7,079 | 7,640 | 1,202 | 6,438 |
| Wages | 77,191 | 82,299 | 57,743 | 24,556 |
| Fines & Losses | 3,770 | 3,770 | 1,623 | 2,147 |
| Legal | 9,232 | 9,732 | 744 | 8,988 |
| Emp. Ben. | 0 | 1,320 | 414 | 906 |
| | $109,179 | $137,805 | $82,520 | $54,565 |

> \* The 1990 spreadsheet totals are based on 11 out of 12 months.
> As explained, one month of the 1990 spreadsheets was not put
> into evidence.

1991

| Category | Computer Spreadsheet | Expenses Per Return | Allowed By Respondent | Disallowed By Respondent |
|---|---|---|---|---|
| Home Office | $ 0 | $ 2,291 | $ 0 | $ 2,291 |
| Utility | 2,115 | 2,115 | 1,944 | 171 |
| Office | 4,109 | 4,109 | 946 | 3,163 |
| Wages | 81,958 | 81,958 | 56,665 | 25,293 |
| Fines & Losses | 4,875 | 2,689 | 1,501 | 1,188 |
| Legal | 3,711 | 3,711 | 252 | 3,459 |
| Medical | 1,188 | 1,188 | 414 | 774 |
| Travel | 2,880 | 2,880 | 0 | 2,880 |
| Meals & Ent. | 5,303 | 4,244 | 2,582 | 1,662 |
| | $106 ,139 | $105,185 | $64,304 | $40,881 |

The disallowed portion of the rent, utility, and office expenses claimed for 1990 and of the utility and office expenses claimed for 1991 relate to petitioner's home office.

OPINION

Under section 162(a), a taxpayer is permitted to deduct all ordinary and necessary expenses paid or incurred in carrying on a trade or business.  Under section 280A, however, deductions

associated with a home office are generally disallowed unless the home office was used exclusively and regularly as the principal place of business for the taxpayer.

Where a taxpayer's business is conducted in part in the taxpayer's residence and in part at another location, the following two primary factors are analyzed in determining whether the home office qualifies under section 280A(c)(1)(A) as the taxpayer's "principal" place of business: (1) The relative importance of the functions or activities performed at each business location; and (2) the amount of time spent at each location. Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993).

Whether the functions or activities performed at the home office are necessary to the business is relevant but not controlling, and the location at which goods and services are delivered to customers generally will be regarded as the principal place of a taxpayer's business. Id. at 176. The relative importance of business activities engaged in at the home office may be substantially outweighed by business activities engaged in at another location. The Supreme Court has explained as follows:

> If the nature of the business requires that its services are rendered or its goods are delivered at a facility with unique or special characteristics, this is a further and weighty consideration in finding that it is the delivery point or facility, not the taxpayer's residence, where the most important functions of the business are undertaken. Id. at 176.

The principal activities relating to petitioner's scrap metal recycling business consist of the collection, processing, and resale of scrap metal, the principal aspects of which are performed at petitioner's warehouse. The warehouse appears to be a facility with unique or special characteristics capable of processing and storing scrap metal. These activities are not performed in petitioner's home office.

The administrative, management, and other activities performed in petitioner's home office certainly constitute a relevant part of petitioner's business, but because the scrap metal is collected and processed at the warehouse, the warehouse is to be regarded as the principal place of petitioner's scrap metal recycling business.

Petitioner argues that negotiations for the purchase and sale of scrap metal that he conducts primarily over the telephone from his home office constitute the principal activity of his business. Petitioner, however, has not established in this case that the actual purchase and sale of scrap metal is to be treated as occurring in his home office, nor that negotiations for the purchase and sale of scrap metal that are conducted over the telephone from his home office constitute the principal activity of the business.

Further, for expenses of a home office to qualify for deductibility under section 280A, no personal use may be made of the particular area of a residence that is used as the home

office. Sec. 280A(c)(1). Petitioner maintained his home office in the living and dining room area of the Estrella residence and of the condominium. We are not convinced that petitioner used these areas solely for his home office. We conclude that all expenses relating to petitioner's home office, including rent, utilities, and office expenses, were correctly disallowed by respondent.

Turning to the other claimed expenses that remain in dispute on the grounds that petitioner has not adequately substantiated the business nature and amount of the expenses, it is well established that taxpayers generally bear the burden of proof regarding claimed business deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Under section 162, deductions are allowed for all ordinary and necessary expenses paid or incurred during a tax year in carrying on a trade or business. Cash basis taxpayers must establish: (1) That the expenses were paid; (2) that they were paid during the year in issue; (3) that they were paid in furtherance of a trade or business; and (4) that they were ordinary and necessary expenses of the trade or business. Sec. 1.162-1, Income Tax Regs.

Taxpayers are required to maintain adequate records to substantiate business expenses and to enable respondent to determine their correct tax liability. Sec. 6001. Where a taxpayer does not have adequate records, the burden of proof

bears heavily on the taxpayer.  Ellis Banking Corp. v. Commissioner, 688 F.2d 1376, 1383 (11th Cir. 1982), affg. in part and remanding in part T.C. Memo. 1981-123; Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).

Where taxpayers establish that they are entitled to deductions for trade or business expenses but are unable to adequately substantiate the exact amount of the expenses, we may estimate the amount of the deductible expenses.  Cohan v. Commissioner, supra at 543-544.  In order, however, for us to estimate the amount of deductible expenses, taxpayers have an obligation to provide some rational basis upon which reasonable estimates may be made.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

In this case, with regard to claimed wages of $24,556 for 1990 and $25,293 for 1991 that are still in dispute, both petitioner and the warehouse foreman testified as to each of the employees whose claimed wages are still in dispute.  They testified as to the employment relationship of each of these employees with petitioner's scrap metal recycling business during 1990 and 1991 and to the length of time employed.  We find the testimony of petitioner and of the foreman to be credible as to these claimed employee wages.  The wages paid to the employees are also generally supported by the daily cash reports and computer spreadsheets that are in evidence.

We sustain in full the deductions claimed by petitioner for 1990 and 1991 for employee wage expenses, including the wage expenses of the warehouse foreman.

With regard to claimed fines and losses of $2,147 for 1990 and $1,188 for 1991 that are still in dispute, petitioner admits that some portion of the claimed fines and losses includes nondeductible traffic fines. Petitioners offer no basis on which we can make an allocation between allowable and nonallowable fines and losses. We sustain respondent's disallowance of these items.

The $8,988 for 1990 and $3,459 for 1991 in disputed legal fees represent either clearly personal expenses or the business nature thereof is not adequately established in the record. At trial, petitioner conceded that $2,500 to $3,500 of these claimed legal expenses represent personal expense, and petitioner did not adequately document the nature of the remaining claimed legal expenses. We sustain respondent's disallowance of the legal fees still in dispute.

With regard to the $906 in claimed employee benefit expenses for 1990 and the $774 in claimed medical expenses for 1991 that are still in dispute, petitioner has failed to substantiate the nature of these expenses. Petitioner admitted at trial that some of these claimed expenses were incurred for personal medical care of two of his daughters. We sustain respondent's disallowance of the claimed employee benefit and medical expenses.

With regard to the $2,880 in travel expenses and the $1,662 in meal and entertainment expenses that are still in dispute for 1991, the standard of proof for business travel and for business-related meal and entertainment expenses is higher than the standard of proof for other business expenses. Under section 274(d), deductions for business travel and business-related meal and entertainment expenses are not allowable on the basis of estimates and unsupported testimony of taxpayers. At a minimum, taxpayer's records must show: (1) The amount of such expenses; (2) the time and place such expenses were incurred; and (3) the business purpose for which such expenses were incurred. Sec. 274(d).

Petitioner has failed to meet the level of substantiation required for the claimed business travel and business-related meal and entertainment expenses that are in dispute for 1991. Petitioner did not present any receipts or underlying records relating to these expenses. Mere entries on the computer spreadsheets for "travel" and "meals/entertainment" do not satisfy the substantiation requirements of section 274(d). We sustain respondent's disallowance of the claimed travel, meal, and entertainment expenses for 1991.

With regard to the additions to tax, under section 6662(a), a 20 percent accuracy-related penalty is applicable to an underpayment of tax attributable to either negligence or to a disregard of rules or regulations (section 6662(b)(1)).

Section 6662(c) defines "negligence" as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  The term "disregard" includes any careless, reckless, or intentional disregard of Treasury rules or regulations.  Sec. 6662(c).

Taxpayers are expected to maintain adequate records to substantiate claimed deductions, and failure to maintain adequate records may constitute negligence.  Sec. 6001; Schroeder v. Commissioner, 40 T.C. 30, 34 (1963).  Even though a taxpayer's records may be lost, the burden is generally still on the taxpayers to substantiate deductions claimed with receipts and other sufficient documentation and evidence.  Petitioner in this case has failed to meet his burden with regard to the adjustments that we have sustained and has failed to convince us as to the cause for his inability to provide at trial additional books and records relating to his scrap metal recycling business.

With the exception noted below, we sustain respondent's determination of the accuracy-related penalties for 1990 and 1991 with respect to all adjustments that we have sustained.

We believe, however, that the accuracy-related addition to tax in this case is not properly attributable to those portions of petitioner's tax deficiencies for 1990 and 1991 that relate to the disallowed home office expense deductions that petitioner claimed and that we have disallowed.  Petitioner did not demonstrate a careless, reckless, or intentional disregard for

the law in claiming these deductions.  We note that the Supreme Court's decision in <u>Commissioner v. Soliman</u>, 506 U.S. 168 (1993), was not made until 1993, and that prior thereto confusion existed as to the proper legal standard to apply to home office expense deductions.  See, e.g., <u>Soliman v. Commissioner</u>, 935 F.2d 52 (4th Cir. 1991), affg. 94 T.C. 20 (1990), revd. 506 U.S. 168 (1993); <u>Meiers v. Commissioner</u>, 782 F.2d 75 (7th Cir. 1986), revg. T.C. Memo. 184-607; <u>Weissman v. Commissioner</u>, 751 F.2d 512 (2d Cir. 1984), revg. T.C. Memo. 1983-724.

<u>Decision will be entered under Rule 155</u>.