LOWELL E. NELSON AND JACQUELINE N. NELSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nelson v. Commissioner
Docket Nos. 15818-83, 15819-83.
United States Tax Court
T.C. Memo 1985-292; 1985 Tax Ct. Memo LEXIS 341; 50 T.C.M. (CCH) 161; T.C.M. (RIA) 85292; June 18, 1985. Mark Arth, for the petitioners. Barbara A. Olson, for the respondent. FAY MEMORANDUM OPINION FAY, Judge:* Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1976
$3,087
1977
4,165
1978
1,205
1979
3,015
*342 After concessions, the sole issue is whether petitioners are entitled to an investment tax credit under section 38[1] with respect to certain equipment which they acquired and then leased to a third party. The facts have been fully stipulated and are so found. Petitioners, Lowell E. and Jacqueline N. Nelson, resided in Forest Lake, Minn., when they filed their petitions in these consolidated cases. Petitioner Lowell E. Nelson (herein, "petitioner") was employed by Lone Star Building Centers, Inc. during 1979, and for that year received wages of $25,422.24. Petitioners reported this amount on their 1979 Federal income tax return, which was filed on the basis of a calendar year using the cash receipts and disbursements method of accounting. During 1979, petitioner acquired a Matsuura Machining Center, Serial No. 7904550 (herein the "Equipment") from National Machine Tool Leasing, Inc. of Albany, Minn. (herein "NMTL") [2], which he in turn leased to Heartland Industries, Inc. of Alexandria, Minn. (herein *343 "Heartland") under an equipment lease dated July 1, 1979 (herein the "Heartland lease"). [3]
The term of the Heartland lease was 24 months, from July 1, 1979 until June 30, 1981, with rent of $2,600 per month payable thereunder. However, petitioner agreed to forego the rental payments for July and August 1979, and thus, began receiving monthly rental income of $2,600 from Heartland commencing in September 1979. [4]
The Heartland lease contained the following paragraph concerning repairs: REPAIRS. [Heartland] *344 at its own cost and expense shall keep the Equipment in good repair, condition and working order. All risk of loss, damage or destruction to the Equipment shall at all times be on [Heartland]. [Heartland] shall effect and bear the expense of all repairs, maintenance, operation and replacement (normal wear and tear excepted) and [petitioner] shall not be liable for any expense without its prior written consent. However, this provision was modified by an addendum to the Heartland lease executed by petitioner and Heartland and dated July 1, 1979, which contained the following provision: REPAIRS - Notwithstanding the language in the paragraph entitled REPAIRS as found on page 2 of [the Heartland lease] it is stipulated and agreed that [petitioner] shall contribute the sum of $4,000.00 to Heartland Industries, Inc., which payment shall serve as consideration for the acceptance by Heartland Industries of all responsibility for repairs. Thus, under this provision, petitioner agreed to pay $4,000 to Heartland in consideration of Heartland's assumption of all maintenance and repair responsibilities with respect to the Equipment during the term of the Heartland *345 lease. Petitioner in fact paid this amount to Heartland by check dated May 9, 1980. [5]
Petitioners claimed an investment tax credit of $9,353 with respect to the Equipment. They used only $896 of this credit for 1979, and, therefore, sought to carry back the balance of $8,457 to prior taxable years. [6] Accordingly, petitioners applied for and obtained tentative refunds of $3,087.00, $4,165.00 and $1,205.00 for 1976, 1977, and 1978, respectively. Respondent subsequently determined that petitioners were not entitled to an investment tax credit with respect to the Equipment. Thus, in his notice of deficiency for 1976, 1977 and 1978, respondent disallowed that portion of the credit which petitioners had carried back. In his notice of deficiency *346 for 1979, respondent disallowed the $896 of the credit which petitioners had claimed for that year, and made certain other adjustments which petitioners do not contest. Thus, the sole issue is whether petitioners are entitled to an investment tax credit with respect to the Equipment. Section 38 allows a credit against tax for investment in certain depreciable property. However, section 46(e)(3) restricts the availability of such credit in the case of certain noncorporate lessors of property, and provides, in relevant part, as follows: (e) LIMITATIONS WITH RESPECT TO CERTAIN PERSONS. * * * (3) Noncorporate Lessors.--A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and *347 for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. Petitioners concede that, as noncorporate lessors of property which they neither manufactured nor produced, they may claim the investment tax credit with respect to the Equipment only if the provisions of section 46(e)(3)(B) are satisfied. Section 46(e)(3)(B) sets forth two distinct tests. Under the first, or "less than 50 percent" test, the term of the lease, taking into account options to renew, must be less than 50 percent of the useful life of the property. See generally Ridder v. Commissioner,76 T.C. 867 (1981). The parties agree that, since the term of the Heartland lease was only two years, or less than 50 percent of the Equipment's seven-year useful life, [7] the first test of section *348 46(e)(3)(B) is satisfied in this case. Resolution of the issue herein depends solely upon whether petitioners have satisfied the second, or "more than 15 percent" test of section 46(e)(3)(B). Under this test, for the period consisting of the first twelve months after the date on which the property is transferred to the lessee, the sum of the deductions with respect to the property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed expenses) must exceed 15 percent of the rental income produced by the property. The parties agrees that the equipment produced $26,000 in rental income for the twelve-month period following the date on which it was transferred to Heartland. [8] Therefore, petitioners must show that for such twelve-month period, the sum of deductions allowable to them with respect to the Equipment solely by reason of section 162 exceeds 15 percent of $26,000, or $3,900. *349 Section 162 allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. [9] Petitioners argues that the $4,000 payment to Heartland constituted such an expense and that, as cash basis taxpayers, they may deduct such item at the time it was paid. Respondent argues, however, that such payment represents a capital expenditure which must be amortized over the 24-month term of the Heartland lease. The principal function of the term "ordinary" in section 162(a) is to differentiate between expenditures which are currently deductible and those which are capital in nature. Commissioner v. Lincoln Savings & Loan Assn.,403 U.S. 345, 353 (1971). Generally, expenditures to acquire assets or secure benefits which last beyond the taxable year must be capitalized. Sec. 1.263(a)-2(a), Income Tax Regs. *350 ; United States v. Mississippi Chemical Corp.,405 U.S. 298, 310 (1972); Central Texas Sav. & Loan Assn. v. United States,731 F.2d 1181, 1183 (5th Cir. 1984); Uecker v. Commissioner,81 T.C. 983, 995 (1983), on appeal (5th Cir, July 17, 1984); Otis v. Commissioner,73 T.C. 671, 674 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981). Although the mere presence of some possible future benefit from an expenditure is not determinative, Commissioner v. Lincoln Savings & Loan Assn.,supra at 354, the fact that an expenditure is likely to give a long-lived benefit or is connected with the acquisition of an asset having an extended life is always an important, if not dominant factor. See Cleveland Elec. Illuminating Co. v. United States,7 Cl. Ct. 220 (1985). Applying these principles to the instant facts, we conclude that the $4,000 payment to Heartland was capital in nature. Although made during the first 12 months of the Heartland lease, this payment created a separate and distinct asset, that is, the right to have Heartland bear all repair *351 and maintenance responsibilities with respect to the Equipment during the entire 24-month term of the Heartland lease. The fact that this was a separate and distinct intangible, rather than tangible, asset does not warrant a different conclusion. Central Texas Sav. & Loan v. United States,supra at 1185. Our conclusion in this respect is supported by this Court's decision in Seligman v. Commissioner,84 T.C. 191 (1985), in which the taxpayers had purchased computer equipment packages for lease. In Seligman, during the first 12 months of the leases, the taxpayer-lessors paid certain amounts for lease administration services which were to be performed over the entire 41-month lease term This Court held that such payments were not currently deductible under section 162, but instead, were required to be amortized over the entire terms of the leases, because they created a separate and distinct asset in the form of the right to have certain services performed during the entire lease terms. Since the taxpayers were not entitled to deductions for such amounts under section 162, they were held to be precluded from taking an investment *352 tax credit with respect to the computer equipment by reason of section 46(e)(3)(B). We find the $4,000 payment herein analogous to those payments considered in Seligman v. Commissioner,supra, in that a benefit having a useful life extending over the entire lease term was secured thereby. In view of the foregoing, we hold that the $4,000 paid to Heartland is not deductible by petitioners under section 162, but rather must be amortized over the entire 24-month term of the Heartland lease.Since, for the prescribed 12-month period, the sum of deductions allowable to petitioners with respect to the Equipment solely by reason of section 162 does not exceed 15 percent of the gross rental income produced by the Equipment, petitioners have failed to satisfy the second test of section 46(e)(3)(B). Therefore, we hold that they are not entitled to an investment tax credit under section 38 with respect to the Equipment. To reflect concessions and the foregoing, Decisions will be entered for respondent.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Richard C. Wilbur to Judge William M. Fay↩ for disposition.
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Petitioner did not actually purchase the Equipment, but rather, leased it from NMTL under a five-year lease. The parties agree, however, that because NMTL filed an election pursuant to sec. 48(d)(1), and the regulations thereunder, petitioner is treated as having acquired the property for purposes of the issue herein. See secs. 48(d)(1), 48(d)(3). They further agree that the Equipment had a useful life of seven years, and that petitioners' basis therein is $93,533.50. ↩
3. The record does not show how petitioner and Heartland became acquainted with one another.↩
4. The record is unclear to why petitioner agreed to forego rental payments for July and August 1979.↩
5. In 1979, the manufactuer of Matsuura Machining Centers did not offer a repair and maintenance service agreement, with respect to the Equipment, nor was such an agreement available through other known parties. However, the parties agree that this amount represents a reasonable, albeit hypothetical, approximation of the cost in 1979 of such a service agreement had one in fact been available at that time.↩
6. See sec. 46(b)(1)↩.
7. See n. 2, supra.↩
8. Under sec. 46(e)(3)(B), the relevant twelve-month period is measured from the date on which the property was transferred to the lessee. Although it is not entirely clear from the record, the parties agree that the Equipment was transferred to Heartland on July 1, 1979, that is, on the date of the Heartland lease. They conclude that since petitioner agreed to forego rent for two months (July and August 1979), the Equipment produced rental income of $2,600 per month for the remaining ten months, for a total of $26,000. Although we have assumed, in accordance with the agreement of the parties, that the Equipment was transferred to Heartland on July 1, 1979, we express some question on this point since the lease pursuant to which they acquired the Equipment from NMTL is dated September 26, 1979. Petitioners assert in their reply brief that, although they did not execute the lease with NMTL until September 1979, they in fact acquired the Equipment in July 1979. However, the record contains no evidence to confirm petitioners' assertion.↩
9. The parties have stipulated that petitioner's rental of the Equipment constituted a trade or business for purposes of sec. 162↩.