97 F.Supp. 595 (1951)
INTERNATIONAL BLDG. CO.
v.
UNITED STATES.
No. 6790.
United States District Court, E. D. Missouri, E. D.
January 22, 1951.
*596 Malcolm I. Frank, St. Louis, Mo., for plaintiff.
Drake Watson, U. S. Atty., New London, Mo., William V. O'Donnell, Asst. U. S. Atty., St. Louis, Mo., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Clarence J. Nickman, Sp. Assts. to Atty. Gen., for defendants.
HULEN, District Judge.
This suit to recover $16,297.96 in taxes, presents as a principal issue the valuation, as of May 1, 1913, of a leasehold, including an office building in the City of St. Louis. Plaintiff's claim to depreciation of $12,500 for each of years 1943, 1944 and 1945; net operating loss carry-overs for same years, and excess profit credit of $170,000 for 1945, depends on determination of the main issue. There is a claim for credit of capital stock tax for years 1943 and 1945, depending on whether such items are legally allowable during year paid if taxpayer is on an accrual basis, and a claim for credit for professional fees of $6,360 paid in a bankruptcy reorganization proceeding, depending on whether it was deductible from gross revenue as "ordinary" business expenses.

I.
Decisions of the Tax Court finding valuation on the leasehold during years previous to those here in issue are claimed by plaintiff to be res adjudicata and to settle that issue in its favor. Defendant contends the decisions were by consent and not binding as to years other than set forth in the order of the Tax Court.
For the year 1933 a stipulation was signed by counsel for plaintiff and defendant (Ex. C) as follows:
"It is hereby stipulated that there is no deficiency in Federal income tax due from the petitioner for the taxable year 1933 and that the following statement shows the petitioner's Federal income tax liability for the taxable year 1933:

Tax liability None
Assessment (Jeopardy):
 January 23, 1943 (not paid) $2,188.12
 _________
Assessment to be abated $2,188.12"

On this stipulation the following "Decision" was made by the Tax Court (Ex. C-1):
"Under written stipulation signed by counsel for the parties in the above-entitled *597 proceeding and filed with the Court on October 11, 1944, it is
"Ordered and Decided: That there is no deficiency in income tax for the calendar year 1933."
The second "Decision" is of like origin and terms, but for another year.
The facts on which the stipulation is based covered valuation of the leasehold now in issue and the amount agreed on was the same as now claimed by plaintiff.
Plaintiff relies on Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 721, 92 L.Ed. 898. That case holds: "* * * where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. * * * And if the very same facts and no others are involved in the second case, a case relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change."
The "Decisions" of the Tax Court relied on by plaintiff admittedly involved no hearings before the Tax Court, no facts were submitted to that Court, by stipulation or otherwise, consequently there were no issues presented for the Court to decide. Without a judgment on the merits there is no foundation for a judicial determination of anything. Res adjudicata obviously cannot attach to such a proceeding. While the Tax Court entitled its memorandum "Decision", it was nothing more than an order confirming an agreement of counsel. There was no decision on any fact or issue. "And a decision of that kind rendered by the Tax Court will not support a plea of estoppel in a case of this nature involving liability for income tax for a different year. Blaffer v. Commissioner, 5 Cir., 134 F.2d 389; Hartford-Empire Co. v. Commissioner, 2 Cir., 137 F.2d 540, certiorari denied, 320 U.S. 787, 64 S.Ct. 196, 88 L.Ed. 473; Riter v. Commissioner, 3 T.C. 301." Trapp v. United States, 10 Cir., 177 F.2d 1, 5.

II.
To fix the value of a fourteen-story office building, as of 37 years ago, as a determining factor in the value of a leasehold, is not a simple matter. This we feel even after hearing expert witnesses unhesitatingly express opinions on the subject. The fact that such opinions varied from a high of $900,000 to a low of $380,019 evidences that valuation by such methods is not an exact science.
The ground in question at Eighth and Chestnut Streets was leased for 99 years on December 27, 1905. The ground rental was $20,000, lessee to pay all taxes. Lessee was required to (and did) build a fourteen story office building on the ground within two years, to cost not less than $600,000. On April 14, 1913, plaintiff corporation was organized and by deed recorded May 1, 1913, acquired the leasehold. The consideration stated in the minutes of plaintiff was all of the authorized capital stock and bonds of plaintiff, consisting of 6,000 shares of common stock of par value of $50 per share, and $300,000 face value first-mortgage bonds. The plaintiff's only asset was the (building on) leasehold. May 1, 1913, is the base period for fixing valuation for the tax claims in issue.
The bonds were sold for face value and as to that $300,000 in value, there is no issue. Plaintiff argues there is "no measure of value of the stock except the value of the property", and this it attempted to show was "$750,000.00" to "$900,000.00", by opinion of two men who had been in the real estate business in St. Louis for many years.
Defendant determined the cost of plaintiff's interest in the leasehold, as of May 1, 1913, to be $430,000. This determination is presumed to be correct. The burden is upon the petitioner to prove this finding is wrong. Gloyd v. Commissioner of Internal Revenue, 8 Cir., 63 F.2d 649 [3, 4].
Considerable time has been spent by plaintiff in attacking the defendant's methods in arriving at the valuation of $430,000. The issue now is correctness of the valuation figure regardless of how made.
*598 In opposition to the opinions of real estate dealers evidence was offered by defendant of transactions represented by authentic book entries, and other documents, contemporaneous with the acquiring of the leasehold by plaintiff.
Plaintiff was organized by the Missouri Lincoln Trust Company.[*] At that time the leasehold was held by a subsidiary of Missouri-Lincoln. On May 14, 1913, after plaintiff acquired the leasehold, Missouri-Lincoln authorized a credit to its bond account of $300,000, on account of plaintiff's bonds, and a credit to its stock account of $100,000, on account of the plaintiff's 6,000 shares of stock with a par value of $50; a total of $400,000. The credits reflect the seller's cost of the leasehold. A balance of $24,525 was written off in the profit and loss account. (See stipulation 11-C.) While not conclusive we think these activities reflect an appraisal on May 1, 1913, of some value. We doubt Missouri-Lincoln would have entered a loss of $24,525 and confined the value of cost of the leasehold to $400,000, had they been of the opinion the leasehold value was anywhere near twice that sum, as placed by plaintiff's witnesses. On January 21, 1906, Missouri-Lincoln had underwritten a bond issue of $450,000 secured by first mortgage on the property. In July, 1907, a subsidiary of Missouri-Lincoln had acquired the property. The deed gave the consideration as $775,000. On October 7, 1908, this subsidiary having defaulted, plaintiff's record grantor, another subsidiary of Missouri-Lincoln, purchased the property at foreclosure for a stated bid of $25,000.
The valuation of $100,000 for the 6,000 shares of stock represents approximately $16.67 a share. On May 20, 1913, Missouri-Lincoln offered to its stockholders the 6,000 shares of stock of plaintiff by subscription at $18 per share. Only 434 shares were sold by closing day of October 21, 1913. It is hard to believe that if informed appraisers had the same opinion in May, 1913, as plaintiff's appraisers now have, retrospectively, that this stock would have gone begging at $18 a share. According to plaintiff's present estimate the stock had a value in excess of $50 a share on May 1, 1913.
In 1917 the Secretary of Missouri-Lincoln advised defendant by letter that the unsold shares had been for sale, to the public, at all times, at $18 a share. In 1919, 17 more shares were sold for $18 a share. In 1918 plaintiff's tax return admits the fair market value of the stock, as of September, 1918, to be $108,000, based on a sale to Missouri-Lincoln at $18 a share. A like admission is made in the 1919 tax return. The 1920 tax return admits a value of $15.33 per share. In the 1917 tax return of the plaintiff the Secretary of plaintiff represented "it was not possible to state that value [of the stock] in excess of the price" for which it had been sold. The remainder of the stock went to its present owner on April 2, 1920, at a price of $13.67 per share, total payment therefor $82,000.
How can this Court accept the testimony of appraisers today as to what in their opinions this leasehold was worth nearly forty years ago, as showing defendant's determination is wrong, when defendant's valuation exceeds opinions expressed at the time in question, in the manner above outlined?
There is a line of cases holding, if property is acquired for stock or securities its cost is the market value of the securities or stock. Section 113(a) of the Internal Revenue Code, 26 U.S.C.A. § 113(a). Hinkel v. Motter, D.C.D.Kan., 39 F.2d 159. It appears the Commissioner, without knowledge of sales of plaintiff's stock, based its appraisal on reproduction cost of the building, less depreciation, and present worth (as of date of acquisition) of expected future rentals from the leasehold, and arrived at the sum of $430,000 as a fair valuation  a figure substantially the same as that reflected by sale of the stock for $100,000 plus $300,000 represented by bonds.
We find the opinion evidence of the two witnesses produced by plaintiff does not *599 represent evidence of such probative force as to be sufficient to overcome the determination of the Commissioner. Two wars have come and gone, with their inflating and deflating impact on values of property. We think it stretches expert opinion to the breaking point under these circumstances to ask that it be accepted to contradict a value reflected in sales of the securities paid for the leasehold where the margin between sale of securities and the opinion given today is one to five. We are unable to account for such a wide difference in opinion, except as an error in the judgment of plaintiff's witnesses. If the seller was in error in undervaluing the stock at one-fifth of its real value in 1913, strange indeed that only 434 of the 6,000 shares were able to find a buyer. The restricted sale lasted only six months, then sales were thrown open to the public with the result that in 1919 seventeen more shares were sold at $18. Then in 1920, after the bonded indebtedness had been reduced from $300,000 as of 1913 to $265,000, the remainder of the stock was sold for $13.67 a share.
Plaintiff has failed to carry the burden of proof on this issue and claim.

III.
The plaintiff by its own choice elected to make returns on an accrual basis. During the years 1943 and 1946, plaintiff paid a capital stock tax and deducted the amounts in its returns for those years as though on a cash basis. It is the holding of the Commissioner that capital stock tax accrues at the beginning of the capital stock tax period rather than at its close, or when the tax is paid; that the deduction for 1942 (paid in 1943) should have been deducted in 1942, as it accrued, and plaintiff incurred the liability on July 1st of that year, and capital stock tax for fiscal year ending June 30, 1945 (paid in 1946) accrued October 7, 1944, when custody of assets under reorganization proceedings was restored to plaintiff. The deductions were disallowed because payment was not on an accrual basis. We think a return is improper that would mix the two systems. It is no answer that plaintiff could not determine the amount of its tax a year previous to payment. Plaintiff of necessity finds that to be the case with many of its deductions under the accrual system. It must use the best information and estimate available.
There is no issue, as I read the briefs, but what plaintiff would have been allowed the deductions had they been taken in the right years, and this fact makes us pause to enforce the rigid rule referred to.
The Government's brief states a deduction was allowed in 1944 for the 1945 payment. Why plaintiff should still be litigating for that deduction, or why a deduction was not allowed in 1942 for the 1943 payment, is left unexplained.
We think in equity and fair dealing that plaintiff should be allowed the 1943 payment as a deduction for 1942, as was done in the case of the 1945 payment. Unless the parties desire to present a further record, in view of these observations, plaintiff will be allowed its claim for the capital stock tax paid in 1943.

IV.
Plaintiff paid and took a deduction in 1944 for attorneys' fees, of which sum $6,360 was disallowed. Plaintiff had been in default on its bonds, and the trustee in the mortgage securing the bonds filed suit to foreclose. Whereupon plaintiff took advantage of proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The approved plan of reorganization called for $8,000 in bonds to be cancelled, and $145,000 par value bonds to be surrendered on payment of 90% of par value. This resulted in cancellation of the existing first mortgage. A new lien maturing in twelve years was placed on the premises. By this proceeding plaintiff preserved its leasehold and cut down its indebtedness. Plaintiff claims no capital asset was acquired and the attorneys' fee paid in prosecuting the bankruptcy proceeding is a general business expense. Defendant disputes the claim and insists the item is properly a capital expenditure and not deductible as an ordinary business expense.
Section 29.23(a)-15 of Treasury Regulations 111 would seem to be against *600 plaintiff's position. Also numerous holdings of the Tax Court. See Bush Terminal Buildings Co. v. Commissioner, 7 T.C. 793, 819. There are rulings of the Courts of Appeals to the same effect. Skenandoa Rayon Corp. v. Commissioner, 2 Cir., 122 F.2d 268. By the latter we are bound.
Let findings of fact, conclusions of law and judgment be presented.
NOTES
[*] Hereinafter referred to as Missouri-Lincoln.