**CENTRAL TEXAS SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 83–1169.

United States Court of Appeals, Fifth Circuit.

May 11, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Jonathan S. Cohen, Terry L. Fredricks, Appellate Sect., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Beard & Kultgen, Pat Beard, Waco, Tex., for plaintiff-appellee.

Before RUBIN, REAVLEY and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

The government appeals the decision of the district court holding that expenditures made in investigating and establishing new branches of a savings and loan association were deductible expenses under 26 U.S.C. § 162(a) (1976). We agree with the government's contention that such expenditures should have been capitalized.

## I. Statement of the Case

Central Texas Savings & Loan Association (Central Texas), with its principal place of business and home office in Marlin, Texas, opened Texas branch offices in Waco (1973), Temple (1974), Rosebud (1976), and Mart (1976). The taxpayer made several expenditures in investigating and in starting up the new branches, including professional fees for economic research and analysis to determine the potential market at each location and attorneys' fees and permit fees attendant upon licensing the new locations.[1] Central Texas initially amortized some of these expenditures. The Internal Revenue Service audited the taxpayer's tax returns for 1972 through 1975, disallowed these amortization deductions, and assessed the taxpayer additional taxes and interest, which the taxpayer paid.

In 1978 and 1979 Central Texas filed amended returns for the years 1972 through 1977, claiming current expense deductions under 26 U.S.C. § 162(a) (1976), for the professional fees and the expenditures made in obtaining permits to open the branches. Some of these deductions were disallowed and others have not been ruled on. In December 1979 the taxpayer filed suit in the District Court, Western District of Texas, claiming a tax refund of $8,971. In the alternative, the taxpayer contended that the expenditures should have been amortized over the life of the "work product," presumably the period of time prior to approval of the permit during which the studies and applications were used.

The district judge ruled in favor of Central Texas, stating that addition of the same services by a newly established branch did not create a separate and distinct asset; it merely enabled the institution to accommodate changing business conditions. The judge also ruled that the expenditures for the permits and studies had no measurable value beyond the date of approval for the branch offices. He relied chiefly on NCNB Corp. v. United States, 684 F.2d 285 (4th Cir.1982) (en banc), in reaching these conclusions. For the reasons set out below, this court reaches a different result from that in NCNB.

## II. Section 162(a) Deductions

Section 162(a) provides that "[t]here shall be allowed as a deduction all the *ordinary and necessary* expenses paid or incurred *during the taxable year* in *carrying on any trade or business....*" (emphasis added). To qualify as an allowable deduction under this section an item "must (1) 'be paid or incurred during the taxable

---

**1.** A savings and loan association must obtain the approval of the Savings and Loan Commissioner of Texas to open each new branch. Tex. Rev.Civ.Stat.Ann. art. 852a, §§ 2.01, 2.08 (Vernon 1964). The license is permanent and enables the holder to challenge future permit applications by other savings and loan institutions for area locations. Part of the requirements for a permit under § 2.08 include establishment of a public need for the proposed association and potential profitability from the likely volume of business at that branch.

year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a necessary expense, and (5) be an 'ordinary' expense." *Commissioner v. Lincoln Savings & Loan Association*, 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971).

▆ "Carrying on any trade or business" has been interpreted to mean that only an existing business, i.e., one that is fully operational, may take advantage of the provision. *See Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir.), *vacated on other grounds*, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143 (1965). Hence, if a taxpayer were to start a new business, the pre-operational or start-up expenses would not be deductible under section 162(a). Similarly, if the taxpayer were to investigate the feasibility of acquiring an existing business or stock in such a business, such costs would not be deductible under section 162(a) but would be capitalized. *See Ellis Banking Corp. v. Commissioner*, 688 F.2d 1376, 1379 (11th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983). It would seem anomalous to say that if a taxpayer purchases or merges with a savings and loan in another city, it must capitalize the investigative and start-up costs; but if it establishes a new office, these same costs may be deducted under § 162(a).

▆ Section 162(a) further requires that an item be paid or incurred and the benefit exhausted during the taxable year to be deductible. While the period of the benefits may not be controlling in all cases, it nonetheless remains a prominent, if not predominant, characteristic of a capital item. *NCNB Corp. v. United States*, 684 F.2d at 295 (Murnaghan, J., dissenting). *See United States v. Mississippi Chemical Corp.*, 405 U.S. 298, 310, 92 S.Ct. 908, 915, 31 L.Ed.2d 217 (1972) (where security is of value in more than one taxable year, it is a capital asset). We still consider, therefore,

that the continuation of the permit's value to the taxpayer for a period exceeding one year is evidence that the permit or its costs of acquisition are capital items. *E.g.*, *Shutler v. United States*, 470 F.2d 1143, 1147 (10th Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2275, 36 L.Ed.2d 959 (1973); *Wells-Lee v. Commissioner*, 360 F.2d 665, 669 (8th Cir.1966); *Nachman v. Commissioner*, 191 F.2d 934, 936 (5th Cir.1951). In this case, the permit was a one-time payment that gave the taxpayer the right to operate for an indefinite period of time. The benefit secured by the permit clearly extended beyond the year in which the fee payment was made. Furthermore, the fact that the fee payment was made only once supports the proposition that the outlay was a capital asset, rather than an annual expense. *Wells-Lee*, 360 F.2d at 670.

The third requirement of section 162(a) is that the expenditure be an ordinary and necessary expense. The courts have long had difficulty determining whether an expenditure is ordinary and necessary.[2] The parties do not contest the necessity of the expenditures to establish the branches. Our inquiry is whether they were ordinary. In *Lincoln Savings*, the Supreme Court addressed the question whether a payment required by section 404(d) of the National Housing Act was deductible as an ordinary expense. 403 U.S. 345, 346, 91 S.Ct. 1893, 1895. The savings and loan association was required to pay a two percent premium of the increase in the total of its insured accounts. *Id.* at 348–49, 91 S.Ct. 1896. This premium was used to provide insurance for deposits in the participating institutions. *Id.* at 350, 91 S.Ct. at 1897. The institution retained a pro rata share in the reserve fund, but the interest was not transferable, except in case of merger or consolidation or similar transactions. *Id.* The taxpayer argued that the premium was an ordinary expense of doing business since it was an obligatory expenditure,

---

**2.** *See Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933) ("One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by stat-

ute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle.").

made by all similarly situated savings and loan institutions, with little possibility of future benefit. *Id.* at 354, 91 S.Ct. at 1899. The Supreme Court disagreed and stated the test for distinguishing an ordinary expense from a capital expenditure:

> The presence of an ensuing benefit that may have some future aspect is not controlling. Many expenses concededly deductible have prospective effect beyond the taxable year.
>
> What is important and controlling, we feel, is that the § 404(d) payment serves to create or enhance for Lincoln what is essentially a separate and distinct additional asset and that, as an inevitable consequence, the payment is capital in nature and not an expense, let alone an ordinary expense, deductible under § 162(a)....

*Id.* at 354, 91 S.Ct. at 1899. Our question, therefore, is whether the establishment of a new branch office creates a separate and distinct additional asset.

The district judge concluded that the expenditures in question related only to the acquisition of a permit and were of no use after the permit was received. We disagree. Section 162(a) must be read in tandem with section 263(a), which provides:

> No deduction shall be allowed for—(1) any amount paid out for new buildings or for permanent improvements on betterments made to increase the value of any property or estate....

26 U.S.C. § 263(a) (1976).

 This provision has been construed to mean that expenditures incurred in the acquisition of a capital asset must generally be capitalized. *Woodward v. Commissioner,* 397 U.S. 572, 576, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577 (1970); *Southland Royalty Co. v. United States,* 582 F.2d 604, 606, 217 Ct.Cl. 431 (1978), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1991, 60 L.Ed.2d 373 (1979). Expenditures "made with the contemplation that they will result in the creation of a capital asset cannot be deducted as ordinary and necessary business expenses even though that expectation is subsequently frustrated or defeated." *Ellis*

*Banking Corp.,* 688 F.2d at 1382 (quoting *Union Mutual Life Insurance Co. v. United States,* 570 F.2d 382, 392 (1st Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978)). The district judge therefore erred by concluding that the expenditures had no measurable value to the savings and loan after it acquired approval to open the branch offices. The character of the item acquired determines the tax treatment of the expenditures made to acquire it. *E.g., Nachman v. Commissioner,* 191 F.2d at 936 (cost of liquor license good for remainder of year must be capitalized where asset could reasonably be expected to serve taxpayer in future years).

The court must look to the character of the item for which the expenditure was made to determine if it was a separate and identifiable asset. The Fourth Circuit, in *NCNB Corp. v. United States,* held that a branch office for a bank was not an asset but merely an expansion of an existing business into new markets. 684 F.2d at 290. In reaching its conclusion it relied upon *Briarcliff Candy Corp. v. Commissioner,* 475 F.2d 775 (2nd Cir.1973), where a candy manufacturer, which owned its own retail stores, set up a "franchise" division within the company to promote sales of its product through other retail outlets such as pharmacies. The manufacturer had no property interest in the space allocated to its product in these stores, and had no control over the store owners. *Id.* at 786. Based on these facts the court determined that the franchises had no ascertainable and measurable value at the time they were established and were, therefore, not assets. *Id.* at 785.

The *NCNB* court also cited the "credit card cases" in which several circuits determined that the costs incurred by banks in providing credit card services to its customers were deductible as ordinary expenses. In *Colorado Springs National Bank v. United States,* 505 F.2d 1185, 1190 (10th Cir.1974), for example, the court determined that credit cards were merely a new method for a bank to provide letters of credit to its customers. The court, adher-

ing to the rule of *Briarcliff,* held that the bank had no property right in the new credit card procedures and that there was no way to determine the useful life of the asset. *Id.* at 1192. *Accord Iowa-Des Moines National Bank v. Commissioner,* 592 F.2d 433 (8th Cir.1979); *First National Bank of South Carolina v. United States,* 558 F.2d 721, 723 (4th Cir.1977).

We distinguish these cases from the situation where an association opens a new branch. *Briarcliff* itself distinguishes creation of a branch office from mere expansion of existing services to new markets: "[T]he changes which Loft made in its own internal organization to spread its sales into a new territory were not comparable to the acquisition of a new additional branch or division to make and sell a new and different product." 475 F.2d at 782. Following *Briarcliff,* we find that Central Texas had a property interest in its branch offices. It had a separate right to do business in a new territory which it acquired by virtue of the permit. It had the right to receive new accounts for new customers in a new market. It gained the right to challenge the entry of competitors into the local market. Even an intangible property right, such as the right to do business, may be a capital item. *E.g., Skilken v. Commissioner,* 420 F.2d 266, 270 (6th Cir.1969) (good will of business must be capitalized). Moreover, this right was easily valued at the time the permit was acquired. It was measurable by the value of its deposits and the income from its loans. That the branch was not transferable is not significant. This fact did not prevent the Supreme Court from holding that a non-transferable interest, except in limited circumstances, was nonetheless an asset. *Lincoln Savings,* 403 U.S. at 350, 91 S.Ct. at 1897. The taxpayer obtained a separate and identifiable business right that was exercised in a separate office by a separate staff in an exclusive territory. We therefore find the branch offices to be separate and distinct assets within the *Lincoln Savings* definition.

In finding branch banks not to be separate assets, the *NCNB* court also relied upon the Comptroller of Currency's requirement that banks treat expenditures for their establishment as expenses in their accounting procedures. Compulsory accounting rules of a regulatory agency, however, do not necessarily determine the tax consequences of the item. *Commissioner v. Idaho Power Co.,* 418 U.S. 1, 15, 94 S.Ct. 2757, 2765, 41 L.Ed.2d 535 (1974); *Commissioner v. Lincoln Savings,* 403 U.S. at 355, 91 S.Ct. at 1899; *Colorado Springs National Bank v. United States,* 505 F.2d at 1188. An accounting practice must accurately reflect income in order to be presumptively controlling. *Idaho Power Co.,* 418 U.S. at 15, 94 S.Ct. at 2766. For the reasons discussed above, we view the deduction of the investigatory and start-up expenses as an inaccurate reflection of the benefits or income of the taxpayer. Although the expenses are incurred in a single year, they procure benefits that endure for the life of the branch. The tax treatment should, therefore, reflect this longevity and the expenditures should be treated as a capital expense. *E.g., Shutler v. United States,* 470 F.2d at 1147; *Wells-Lee v. Commissioner,* 360 F.2d at 669; *Nachman v. Commissioner,* 191 F.2d at 936. Furthermore, while the internal accounting procedures may treat the branches and the home office as a single entity, it is clear that each branch is also viewed separately, since the profitability of each branch must be assessed. This further supports our conclusion that each branch must be valued as a separate asset.

### III. Amortization

The district court did not address whether the expenditures could be amortized, having determined that they would be deducted as expenses under section 162(a). Congress has now provided for amortization of certain expenditures:

Election to amortize.—start-up expenditures may, at the election of the taxpayer, be treated as deferred expenses. Such deferred expenses shall be allowed as a deduction ratably over such period

of not less than 60 months as may be selected by the taxpayer (beginning with the month in which the business begins). 26 U.S.C. § 195(a) (1981). Section (b) defines a start-up expenditure as "any amount—(1) paid or incurred in connection with—(a) investigating the creation or acquisition of an active trade or business...." Allowable expenses include training and professional services for setting up books. 1980 U.S.Code Cong. & Admin.News 7293, at 7301. The expenditures involved, however, must also be those that would be deductible if they were paid in connection with the expansion of an existing business. 26 U.S.C. § 195(b)(2) (1981). We do not decide whether the expenditures in question in this case would meet this second requirement. This statute applies to amounts paid or incurred after July 29, 1980, and Central Texas cannot qualify for amortization of their expenditures. In the future, however, section 195(a) should encourage formation of new businesses without the attendant controversy and litigation to determine the proper tax classification of the start-up expenditures.

REVERSED.