Milton J. SELIGMAN and Estate of
Francine Seligman,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

Faye S. HUTTON and Estate of C. Herbert Hutton, Deceased, Faye S. Hutton, Executrix, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 85–4851.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1986.

Sands & Tyler, O. Jan Tyler, J. Duncan Webb, IV, Dallas, Tex., for petitioners-appellants.

Fred T. Goldbert, Jr., Chief Counsel, I.R.S., Marlene Gross, Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Robert L. Baker, Ann Belanger Durney Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellee.

Before GEE and HIGGINBOTHAM, Circuit Judges, and HARVEY *, District Judge.

JAMES HARVEY, District Judge:

This is an appeal from a decision of the United States Tax Court, 84 T.C. 191, which found that payments made by appellant taxpayer-lessors during the first twelve months of a 41–month lease for administrative services to be performed during the entire lease period were not

* District Judge for the Eastern District of Michigan, sitting by designation.

ordinary and necessary business expenses deductible under Section 162 of the Internal Revenue Code but, rather, capital assets which must be capitalized and amortized over the life of the lease. The effect of this finding was to disallow an investment tax credit claimed by the appellants under subsections 38 and 46(e)(3) in connection with their purchase of computer equipment.

## BACKGROUND

In 1978, Financial Marketing Services, Inc. (FMS) purchased certain Honeywell computer equipment from FNC Leasing Company and Citco Leasing Corp. for $1,700,000.00. FMS then resold the computer equipment to Omega Leasing Company for $1,955,000.00. $255,000.00 of the $1,955,000.00 was payable in cash. The balance was to be paid pursuant to 17 nonrecourse notes in the amount of $85,-000.00 each and one note in the amount of $255,000.00.

Subsequent to its sale to Omega, ownership of the computer equipment was divided into 17 packages having a value of $100,000.00 and one package having a value of $300,000.00. Omega then sold the $100,000.00 packages to 17 individual investors for a cash downpayment of $15,000.00 and an $85,000.00 nonrecourse note of indebtedness to FMS. The $300,000.00 package was sold for $45,000.00 in cash and a $255,000.00 note of indebtedness. Appellants each purchased one $100,000.00 package.

Following the purchase of the equipment packages by the individual investors, the computer equipment was leased back to FMS pursuant to a Master Equipment Lease. This lease was for a period of 41 months and called for monthly payments of $1,460.00 for each $100,000.00 investment. The Master Equipment Lease also called for the individual investor/lessors to pay a monthly management fee of $255.00 for a period of 12 months to Manmark Company. Manmark Co. was paid to coordinate the lease payments from the lessee of the computer equipment to the investor/lessors

and the note payments from the investor/lessors to FMS. Additionally, Manmark Co. provided assistance and information to the individual investor/lessors for accounting and tax purposes.

On their tax returns, the appellant investor/lessors claimed the 12 monthly payments to Manmark Co. as deductions under Section 162(a) and also claimed an investment tax credit pursuant to Sections 38 and 46(e)(3). The Commissioner disallowed the claimed investment tax credits finding that the payments of the administrative expenses to Manmark Co. were not ordinary and necessary business expenses but, rather, capital expenses that should have been amortized over the entire 41–month lease period. Appellants petitioned the Tax Court for a redetermination of the deficiencies. Following a trial, the Tax Court entered a judgment upholding the deficiency determinations.

## DISCUSSION

In order for the appellant taxpayers to qualify for an investment tax credit under 26 U.S.C. § 38, they must satisfy the requirements of 26 U.S.C. § 46(e)(3) which provides

(3) **Noncorporate lessors**—A credit shall be allowed by Section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if—

(A) the property subject to the lease has been manufactured or produced by the lessor, or

(B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.

The parties do not dispute that subsection 46(e)(3)(A) is inapplicable in the present case. Accordingly, the appellants must satisfy the twofold requirements of subsection 46(e)(3)(B) if they are to claim an investment tax credit. As to subsection B, it is undisputed that the term of the lease is less than 50% of the useful life of the computer equipment which is the subject of the lease. Appellants, therefore, satisfy the first requirement of subsection B.

Turning to the second requirement of subsection 46(e)(3)(B), the Court reaches the crux of the appeal now before it. The second requirement of subsection B is that expenses deductible under Section 162 during the first twelve months of the lease exceed 15% of the rental income from the equipment. Appellants each received $17,520.00 in rental income during the first twelve months of the lease. The total administrative fee paid to Manmark Co. during that period by each appellant was $2,700.00. Accordingly, because $2,700.00 exceeds 15% of $17,520.00, appellants claim that they have fully satisfied the noncorporate lessor requirements of Section 46(e)(3)(B) and, therefore, are entitled to a 10% investment tax credit pursuant to Section 38. Appellee responds that appellants are not entitled to the claimed investment tax credits because the fees paid to Manmark Co. are not deductible under Section 162. Succinctly, appellee argues that the claimed deductions under Section 162(a) are inappropriate because the services provided by Manmark Co. were to be performed over the entire life of the lease and constitute capital assets which must be amortized over the full lease term.

As many courts have recognized, the characterization of an expenditure as a current business expense or a capital expenditure is often difficult. Even more often, it is a topic of discussion for taxpayers and the Internal Revenue Service. Describing the characterization process of such business expenses, Justice Cardozo noted in *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), that "[o]ne struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." *See also, Briarcliff Candy Corporation v. C.I.R.*, 475 F.2d 775, 785 (2nd Cir.1973).

■ Section 162(a) of the Internal Revenue Code provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...."

In *Commissioner v. Lincoln Savings & Loan Association*, 403 U.S. 345, 91 S.Ct. 1893, 29 L.Ed.2d 519 (1971), the Supreme Court summarized the deductibility requirements under Section 162(a) as follows: "[t]o qualify as an allowable deduction under § 162(a) of the 1954 Code, an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." *Id.* at 352, 91 S.Ct. at 1898. This Court relied upon the *Lincoln Savings & Loan Association* decision in *Central Texas Savings & Loan Association v. United States*, 731 F.2d 1181 (5th Cir.1984), and more fully discussed various of the deductibility requirements in that case. *Id.* at 1182–84. *See also, Campbell Taggart, Inc. v. United States*, 744 F.2d 442, 454 and n. 32 (5th Cir.1984).

Prior to the decision in *Lincoln Savings & Loan Association*, various circuits had distinguished capital expenditures from ordinary business expenses simply on the basis of whether the expenditure in issue was for an asset that would produce benefits lasting beyond the current fiscal year. If so, the asset was deemed to be capital in nature. *See e.g., Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir.1965), *vacated on other grounds*, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143 (1965), *original holding on this issue reaffirmed*, 354 F.2d 410 (4th Cir.1965), *overruled in relevant part, NCNB Corp. v. United States*, 684 F.2d 285, 289 (4th Cir.1982).

In its opinion in *Lincoln Savings & Loan Association,* the Supreme Court rejected the "one year rule of thumb" approach as an exclusive and determinative method for characterizing an asset. The Court wrote that

> the presence of an ensuing benefit that may have some future aspect is not controlling; many expenses concededly deductible have prospective effect beyond the taxable year.

> What is important and controlling, we feel, is that the § 404(d) payment serves to create or enhance for Lincoln what is essentially a separate and distinct additional asset and that, as an inevitable consequence, the payment is capital in nature and not an expense, let alone as ordinary expense, deductible under § 162(a) in the absence of other factors not established here.

403 U.S. at 354, 91 S.Ct. at 1899.

Nevertheless, while the "one year rule of thumb" may no longer be considered dispositive in characterizing an asset, it is clearly an appropriate factor to be considered. Indeed, it is the "prominent, if not predominant characteristic of a capital item." *Id.* at 1183. *See also, United States v. Mississippi Chemical Corporation,* 405 U.S. 298, 310, 92 S.Ct. 908, 915, 31 L.Ed.2d 217 (1972) ("Since the security is of value in more than one taxable year, it is a capital asset within the meaning of § 1221 of the Internal Revenue Code, and its cost is nondeductible.").

■ Applying these principles to the issue at hand, the Court finds that the Tax Court correctly characterized the management fees paid to Manmark Co. as a "separate and distinct additional asset" and, therefore, a capital expenditure.

Initially, the Court notes that the Tax Court found that "Petitioners' contentions that their administrative expense payments to Manmark were scheduled during the time period that Manmark contemplated that it would be rendering most of the services and that most of Manmark's services were, in fact, rendered during the first 12 months of the 41–month computer equipment leases is not supported by the record." This finding is one of fact and, therefore, can be reversed only if found to be clearly erroneous. *See, Commissioner v. Rubenstein,* 363 U.S. 278, 291–92, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960) and 26 U.S.C. § 7482.

In considering whether the Tax Court's finding that Manmark Co. performed substantially the same services over the entire 41–month lease period is clearly erroneous, this Court should not lightly discard the opportunity of the Tax Court to listen to the live testimony of the witnesses. That opportunity was important in this case inasmuch as the Court rejected the testimony of several of appellants' witnesses including Mr. Tyler who served as president of both Omega Co. and Manmark Co., and who the Tax Court found had a direct pecuniary interest in this case.

Upon consideration, the Court holds that the Tax Court's finding that Manmark Co. was to provide substantially the same management services throughout the entire lease period is not clearly erroneous. This being true, the initial factor to be considered in characterizing the asset, the length of the period of benefit, suggests that the payments to Manmark Co. were for an asset that is capital in nature.

Looking next to the nature of the services provided by Manmark Co., the Court finds that they also suggest the existence of a separate and distinct capital asset which is not deductible as a current expense under Section 162(a). Manmark's responsibilities included collecting all monthly payments made by the lessee of the computer equipment to the investor/lessors, making all payments due to FMS under the 18 separate nonrecourse notes of indebtedness, and remitting the difference between the lease income and note payments to the investor/lessors quarterly. Finally, Manmark prepared annual tax statements for the investor/lessors concerning the leasing activities. These responsibilities demonstrate the existence of a separate and distinct asset under *Lincoln Savings & Loan Association.*

Accordingly, the decision of the United States Tax Court finding that the payments in question are capital expenditures and nondeductible under Section 162(a) and that appellants are, therefore, not entitled to the claimed investment tax credits under Sections 38 and 46(e)(3) is AFFIRMED.