**In re PLACID OIL COMPANY, Debtor.**

**Bankruptcy No. 386–33419–A–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

May 15, 1990.

See also 102 B.R. 538.

Khent H. Rowton, Simon, Anisman, Doby, Wilson & Skillern, Fort Worth, Tex., for debtor.

Grover Hartt, III, Tax Div., Dept. of Justice, Dallas, Tex., for The U.S.

## SECOND REVISED MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

Before the Court for consideration is Placid Oil Company's ("Placid's") Objection to Administrative Claim Filed by the Internal Revenue Service ("IRS"). After hearing oral argument on the objection, the Court took the matter under advisement. After reviewing the objecting and responsive documents, the Court denies Placid's objection.

The Court has jurisdiction over this core matter under 28 U.S.C. § 157(B)(2)(A), (B) and (O). Although written in narrative form, this memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## I. FACTS

Placid filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on August 29, 1986, commencing these bankruptcy proceedings. Prior to filing the petition, Placid was indebted to secured creditors for over $770 million, to unsecured creditors for over $50 million, and to tax claimants in excess of $543 million. After Placid unsuccessfully attempted to restructure its debt, the secured creditors initiated foreclosure proceedings against certain of Placid's oil, gas and real estate properties. In response to the impending foreclosures, Placid and Placid Building and Service Company ("PBSC") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. The cases were consolidated for administrative purposes.

Placid's bankruptcy was a long and expensive proceeding. In 1986 and 1987, Placid incurred over $7 million in profes-

sional expenses. Placid attempted to deduct these expenses as business expenses on their tax returns. The IRS issued a Revenue Agent's Report and Notice of Deficiency to Placid contesting the deductibility of Placid's post-petition professional expenses. Specifically, the IRS disallowed deductions for professional fees and expenses of $1,199,054.91 for the 1986 tax year and $6,938,523.64 in the 1987 tax year for a total of $8,137,578.55. On December 7, 1988, the IRS filed a request for payment of administrative expenses for over $12 million in taxes from tax years 1986 and 1987. Placid then filed an objection to the IRS administrative claim initiating this contested matter.

## ISSUES

The issues for determination are: (1) whether Placid or the IRS bears the ultimate burden of proof as to the IRS administrative claim and (2) whether Placid's professional expenses are deductible business expenses under I.R.C. § 162(a).

### 1. WHO BEARS THE (ULTIMATE) BURDEN OF PROOF?

■ The Court first addresses the issue of which party bears the ultimate burden of proof for this claim objection. The IRS asserts that in tax court the taxpayer always bears the burden of proof for deductions, and the burden of proof standard should not be different in the bankruptcy arena. Placid responds that in bankruptcy court, the claim objector has the burden of rebutting the claimant's proof of claim, but the claimant bears the ultimate burden of proving the claim.

■ The Court acknowledges that Placid would bear the final burden of proof in tax court[1], but the tax court burden of proof does not apply to a claim objection contest in the bankruptcy court. Bankruptcy Rule 3001 provides that a correctly filed proof of claim is prima facie evidence of the validity and the amount of the claim. *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 551–52 (5th Cir.1985). A claim objection by the debtor-in-possession or trustee initiates a contested matter under Bankruptcy Rule 9014, and the objecting party has the burden of producing evidence that rebuts the claim. *California State Board of Equalization v. Official Unsecured Creditor's Committee (In re Fidelity Holding Co. Ltd.)*, 837 F.2d 696, 698 (5th Cir.1988). The objecting party must produce evidence that is "of probative force equal to that of the creditor's proof of claim."[2] Once the objecting party produces such evidence, the burden then shifts back to the claimant, even a federal or state taxing authority, to prove the claim by the preponderance of the evidence, because the claimant always carries the ultimate burden of proof. *In re Fidelity Holding Co., Ltd.*, 837 F.2d at 698. The IRS has correctly filed its proof of claim creating a prima facie case in its favor.[3] Accordingly, Placid must produce sufficient evidence that its professional expenses qualify for business expense deductions to

**1.** Deductions allowed by the Internal Revenue Code are a matter of legislative grace. *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974). The taxpayer bears the burden of showing his or her entitlement to a particular deduction. *C.A. White Trucking Co., Inc. v. Commissioner*, 601 F.2d 867, 869 (5th Cir.1979), *Cagle v. Commissioner*, 539 F.2d 409, 416 (5th Cir.1976).

**2.** *In re Simmons*, 765 F.2d at 552. Collier has observed:

While the burden of ultimate persuasion is always on the claimant, and while probative force is given to the allegations in that creditor's proof of claim, the trustee nonetheless carries the burden of going forward to meet, overcome, or at least equalize, what operates in favor of the creditor by the force of section 502(a) and the Rule.

3 *Collier on Bankruptcy*, ¶ 502.01 p. 502–17 (15th ed. 1989). Furthermore, Russell has commented:

In the final analysis, the amount of evidence necessary to rebut a presumption will vary depending upon such factors as the policy reasons favoring the presumption, the strength of the evidence supporting the presumption, and the quality and believability of the rebutting evidence.

Russell, *Bankruptcy Evidence Manual*, § 301.3 p. 42 (West 1987).

**3.** The Court notes that the IRS claim is an administrative claim for post-petition taxes, but the same burden of proof standards apply to administrative claims.

rebut the IRS's prima facie case. If Placid produces such evidence, the burden shifts back to the IRS to show by a preponderance of the evidence that Placid's professional expenses are not deductible. Thus, the Court concludes that the IRS, as claimant, bears the ultimate burden of proof on its administrative claim.

## 2. SECTION 162(a) BUSINESS EXPENSES

The Court next addresses the issue of whether Placid's professional expenses are deductible business expenses under I.R.C. § 162(a). First, the Court notes that the IRS does not dispute the deductibility of the professional expenses Placid would have incurred irrespective of the bankruptcy.[4] Thus, the Court need only address the professional expenses Placid incurred related to its bankruptcy.

■ Section 162(a) allows taxpayers to deduct expenses paid or incurred during the taxable year in carrying on a trade or business.[5] To qualify as an allowable deduction under § 162(a), the expenses item "must (1) 'be paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." *Commissioner v. Lincoln Savings & Loan Assoc.*, 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971). In Placid's case, the only dispute is whether Placid's bankruptcy profes-

sional expenses meet the ordinariness requirement of § 162(a).

■ The term "ordinary" has proven to be somewhat illusive. Initially, the Supreme Court defined ordinary based on the frequency of occurrence of the expense or the events that led to the expense.[6] Currently, courts analyze the ordinariness requirement of § 162(a) in conjunction with I.R.C. § 263(a) which denies current deductions for capital expenses.[7] Accordingly, courts have developed tests to distinguish business expenses from capital expenses. In *Lincoln Savings*, the Supreme Court established the "separate and distinct asset" test where a court must determine whether the expense in issue creates or enhances a separate and distinct additional asset in order to ascertain whether an expense is to be capitalized. *Lincoln Savings*, 403 U.S. at 354, 91 S.Ct. at 1899. Additionally, the Fifth Circuit has held the "one year" rule to be another important test in distinguishing capital expenses from business expenses. *Seligman v. Commissioner*, 796 F.2d 116, 119 (5th Cir.1986). Under the "one year" rule, courts identify capital expenses on the basis of whether the expense creates an asset that will produce benefits lasting beyond the current fiscal year. *Seligman*, 796 F.2d at 118.

■ Applying this analysis to Placid, the Court must determine whether Placid's bankruptcy expenses created or enhanced a separate and distinct asset benefitting Placid's future operations. For example, in a

---

4. Brief in Support of the IRS Administrative Claim at 22. As will be discussed in a subsequent portion of this opinion, the court was unable to segregate these undisputed expenses from the disputed expenses.

5. "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...." 26 U.S.C. § 162(a) (1982).

6. In *Welch v. Helvering*, 290 U.S. 111, 113–15, 54 S.Ct. 8, 8–9, 78 L.Ed. 212 (1933), Justice Cardozo contemplated that a once-in-a-lifetime expense of the taxpayer could be an ordinary expense depending on the facts and circumstances surrounding the taxpayer's business. Later, in *Deputy v. du Pont*, 308 U.S. 488, 495, 60 S.Ct. 363,

367, 84 L.Ed. 416 (1940), Justice Douglas further elaborated that "[A]n expense may be ordinary though it happen but once in the taxpayer's lifetime ... Yet the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved."

7. "No deduction shall be allowed for—(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." 26 U.S.C. § 263(a) (Supp. V 1987).

The Supreme Court has noted that § 263 "serves to prevent a taxpayer from utilizing currently a deduction properly attributable, through amortization, to later tax years when the capital asset becomes income producing." *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 16, 94 S.Ct. 2757, 2766, 41 L.Ed.2d 535 (1974).

non-bankruptcy setting, reorganization expenses are considered capital expenses because they contribute to the creation of an intangible asset in changing the corporate structure for the benefit of the corporation's future operations.[8] Moreover, courts have found bankruptcy reorganization expenses to be capital expenses.[9] Thus, the Court must determine whether Placid's bankruptcy expenses achieved a reorganization creating or enhancing a separate and distinct intangible asset benefitting Placid's future operations.

Placid does not attempt to dispute the authority that reorganization expenses are capital, but instead raises the issue of whether Placid's bankruptcy constituted a reorganization. Placid first contends that a reorganization under Chapter 11 of the United States Bankruptcy Code does not necessarily mean a reorganization takes place. Placid suggests that bankruptcies filed under Chapter 11 of the United States

Bankruptcy Code have become a more common business tactic for dealing with creditors, and that businesses filing Chapter 11's do not necessarily intend to reorganize. Placid argues that its motive for filing bankruptcy was to protect its assets from foreclosure; not to reorganize. Placid asserts that courts have recognized that professional expenses in defense of a business and its assets can satisfy the "ordinary" criteria for deductibility under § 162(a) even though such expenses may be uncommon.[10]

Placid further contends that its bankruptcy should not be treated as a reorganization, because it does not fit within any of the definitions of I.R.C. § 368(a) which defines types of reorganizations recognized under the tax code.[11] Placid notes that its Joint Plan of Reorganization, confirmed on September 30, 1988, provides for payment of all obligations with no issuance of new stock, no change in stock ownership, no

---

**8.** *See Vulcan Materials Co. v. United States,* 446 F.2d 690, 693 (5th Cir.), *cert. denied,* 404 U.S. 942, 92 S.Ct. 279, 30 L.Ed.2d 255 (1971), *Mills Estate, Inc. v. Commissioner,* 206 F.2d 244, 246 (2d Cir.1953), *E.I. du Pont de Nemours & Co. v. United States,* 432 F.2d 1052, 1059 (3d Cir.1970).

**9.** *See Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. United States,* 404 F.2d 960, 968, 186 Ct.Cl. 250 (1968), *Denver & Rio Grande Western Railroad Co. v. Commissioner,* 38 T.C. 557, 576–82 (1962), *Record Realty Co. v. Commissioner,* 6 T.C. 823 (1946).

**10.** Placid cites cases which hold that expenses incurred in defense of the business are deductible business expenses under I.R.C. § 162(a). *See, Eg., Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933), *Kanne v. American Factors, Ltd.,* 190 F.2d 155 (9th Cir.1951).

**11.** Section 368(a) provides:

(1) In general—For purposes of parts I and II and this part, the term "reorganization" means—

(A) a statutory merger or consolidation;

(B) the acquisition by one corporation in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition);

(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

(E) a recapitalization;

(F) a mere change in identity, form, or place of organization of one corporation, however effected; or

(G) a transfer by a corporation of all or a part of its assets to another corporation in a title 11 or similar case; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356.

change in corporate officers, and no difference from Placid's pre-filing corporate structure. Placid contends that this transaction does not constitute a reorganization under I.R.C. § 368(a). Placid therefore concludes that its bankruptcy professional expenses are not reorganization expenses but qualify as deductible business expenses under I.R.C. § 162(a).

The IRS responds that Placid's bankruptcy proceedings were in substance a reorganization. The IRS argues that Placid was forced to sell substantial assets and reduce its work force. Furthermore, the IRS contends that Placid's bankruptcy was a vehicle for debt restructuring, and that such debt restructuring constituted a business reorganization. Thus, the IRS concludes that Placid's bankruptcy, at the very least, effectuated a contraction in Placid's corporate structure and the expenses related to this restructuring/reorganization are non-deductible capital expenses.

█ The Court finds Placid's arguments unpersuasive. First, the Court considers Placid's reliance on I.R.C. § 368(a) misplaced. The Court agrees that Placid's bankruptcy does not fit within any of the types of reorganizations defined in § 368(a), but the Court can find no authority that Congress intended § 368(a) to be the exclusive list of all possible types of reorganizations for the purposes of determining the deductibility of expenses.[12] Therefore, even though Placid's bankruptcy does not fit within the technical definitions of § 368(a), the Court is not precluded from finding Placid's bankruptcy expenses to be capital expenses. Furthermore, while

there has been a rise in bankruptcy filings in recent years, the Court disagrees with Placid's assertion that bankruptcies are now a common business practice. The Court considers the choice to file bankruptcy a serious and desperate action, because a business filing for bankruptcy protection subjects itself to potential involuntary liquidation or a substitution of ownership.

█ Finally, the Court finds that Placid's bankruptcy proceedings constituted a business reorganization. The Court notes that Placid was forced to sell a substantial portion of its capital assets to come up with the $685 million needed to fund its Plan of Reorganization.[13] The Court further notes other post-petition sales of assets by Placid,[14] a reduction of employees from 1500 at the date of the bankruptcy filing to 900 after confirmation, and a restructure of the payment to creditors, including the IRS *International Building Co. v. United States,* 97 F.Supp. 595 (E.D.Mo.1951) *affirmed* 199 F.2d 12 (8th Cir.1952), *rev'd on other grounds,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953) involved a similar situation in a Chapter X proceeding under the Bankruptcy Act where the debtor restructured its debt without changing its equity structure. The Court held that the term "reorganization" included cancelling mortgages, cancelling bonds, and other debt restructuring. The Court classified the debtor's professional fees as capital expenses disallowing the debtor's business deductions for their attorney's fees. *International Building Co.,* 97 F.Supp. at 599. Likewise, this Court holds that Placid's debt restructur-

---

26 U.S.C. § 368(a) (1982).

**12.** However, the Court notes authority contrary to Placid's § 368 argument. See *National Starch & Chemical Corp. v. Commissioner,* 93 T.C. 67, 73–75 (1989) *citing* B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders,* ¶ 5.06.2, p. 5–33 (5th ed. 1987) stating:

The well-established rule in this area is that amounts incurred to effectuate a corporate "reorganization" (in the broad sense of a rearrangement resulting in a restructuring of the corporate entity or enterprise, even if not a technical "reorganization" as defined by section 368(a) * * * are not currently deductible

as business expenses under section 162 by the person incurring such costs.

**13.** Placid was forced to sell its Black Lake property for $150 million and its Thanksgiving Tower property for $223.5 million.

**14.** During the bankruptcy, Placid sold:
1) a 25% interest of its Green Canyon project for $15 million;
2) various properties to Exxon for $10 million;
3) a gold mine for $20 million;
4) a warehouse for $1.58 million;
5) an interest in "Top of the Wilcox" wells for $1,285,714; and
6) an interest in "High Island 232" for $1.150 million.

ing in bankruptcy constituted a reorganization. Through the bankruptcy, Placid restructured its debt as to amount and terms of payment. Furthermore, Placid's bankruptcy reorganization not only insured Placid's survival but maintained the reorganization value of the corporation for the creditors and the owners. The Court reads *Lincoln Savings'* "separate and distinct asset" test to include a bankruptcy reorganization which enhances the value of the entity as an enterprise, and is achieved by debt restructuring with retention of the corporate reorganization value for the creditors and equity. Accordingly, the Court holds that certain expenses arising from and related to Placid's bankruptcy are nondeductible capital expenses.

█ Having determined certain of Placid's bankruptcy expenses to be capital expenses, the Court is frustrated in its attempt to segregate Placid's non-deductible bankruptcy professional expenses from the deductible professional expenses. Upon review of the stipulated facts, the Court can only identify portions of certain expenses that are solely related to Placid's bankruptcy. The Court concludes that the fees paid to the law firm of Hutcheson & Grundy, and to the accounting firm Touche Ross for

their services to the Unsecured Creditor's Committee, plus the $6,000 of United States Trustee's fees, are principally related to the bankruptcy restructure and are capital expenses. The Court can go no further on this record.

Placid has not provided the Court with enough information to categorize the fees and expenses of the debtor's professionals. Specifically, Placid has not properly defined categories of reorganization expenses versus ordinary expenses. The Court acknowledges Placid's attempt to segregate the "ordinary" expenses,[15] but finds Placid's "breakouts" too simplistic. To analyze the deductibility questions, one must consider the nature of various bankruptcy involvements. When a bankruptcy proceeding is filed an estate is created[16] which creates an entity known as a Debtor–In–Possession[17], and spawns various proceedings in that main case.[18] These proceedings involve motions for Court authority to engage professionals, to use cash collateral, to assume or reject executory contracts, to engage in post-petition financing, and a myriad of other types of proceedings to achieve day to day operations. Also ancillary to the main proceeding, there may be adversary proceedings.[19] Those adver-

---

15. Placid segregated the expenses in the following manner:

|  | Bankruptcy Reorganization | Bankruptcy Proceedings | Claims Operations Etc. |
|---|---|---|---|
| S & A | 19% | 6% | 74% |
| H & G | 23% | 46% | 31% |
| PM & M | 1% | 5% | 94% |
| TR | 5% | 19% | 76% |
| MG | ½% | 48% | 51½% |
| Miscellaneous | (see each item) | | |

16. 11 U.S.C. § 541(a) (Supp. V 1987).

17. 11 U.S.C. § 1107 (Supp. V 1987).

18. Bankruptcy Rule 9014.

19. Bankruptcy Rule 7001 et seq. provides:
    An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property, except a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002, (2) to determine the validity, priority, or ex-

tent of a lien or other interest in property, other than a proceeding under Rule 4003(d), (3) to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property, (4) to object to or revoke a discharge, (5) to revoke an order of confirmation of a chapter 11 or chapter 13 plan, (6) to determine the dischargeability of a debt, (7) to obtain an injunction or other equitable relief, (8) to subordinate any allowed claim or interest, except when subordination is provided in a chapter 9, 11, or 13 plan, (9) to obtain a declaratory judgment relating to any of the foregoing, or (10) to

sary proceedings may involve suits to recover preferences, fraudulent transfers, or damages for breach of agreements (such as in this case take or pay gas purchase contracts).

Of the described proceedings, some go to the day-to-day operation of the business of the Debtor–In–Possession. This might involve objections to claims as to current amounts due or eligible for credit, motions to use cash collateral for day-to-day operations, and other such ordinary and necessary activity of a day-to-day operation of a business. Other proceedings such as negotiations for payment of secured or unsecured debts through a plan over a period of time would involve activities more of a capital, long-term nature. Placid has not brought forth such an analysis that would enable the Court to categorize the various expenditures.

As previously discussed, Placid bears the burden of coming forward with evidence to rebut the IRS's prima facie case. *In re Fidelity Holding Co. Ltd.*, 837 F.2d 696, 698 (5th Cir.1988). The Court concludes that Placid has failed to meet its burden of production because it has not provided the Court with enough data indicative of Placid's proper segregation of bankruptcy-related capital expenses from the ordinary business expenses. Accordingly, the Court must DENY Placid's objection to the IRS's administrative claim.

Counsel for IRS is requested to prepare an appropriate order.

determine a claim or cause of action removed pursuant to 28 U.S.C. § 1452.